# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00997-SKC-KAS

ESTATE OF DEZAREE NICOLE ARCHULETA, *et al.*,

    Plaintiffs,

v.

WELLPATH, LLC, *et al.*,

    Defendants

---

## SCHEDULING ORDER
---

### 1.  DATE OF CONFERENCE

The Court has set a Scheduling/Planning Conference pursuant to Fed. R. Civ. P. 16(b) on September 10, 2024. Appearing for the parties are:

| | |
|---|---|
| Mari Newman<br>Andy McNulty<br>NEWMAN \| MCNULTY LLC<br>1490 N. Lafayette Street, Suite 304<br>Denver, CO 80218<br>720-850-5770<br>Mari@Newman-McNulty.com<br>Andy@Newman-McNulty.com<br><br>*Attorneys for Plaintiffs* | Ashlee Hesman<br>Kristina Rood<br>Struck Love Bojanowski & Acedo, PLC<br>3100 W. Ray Road, Suite 300<br>Chandler, Arizona 85226<br>480-420-1608<br>krood@strucklove.com<br><br>*Attorney for Defendants Wellpath, Mohr, Keaveny, and Wesolowski*<br><br>Joyce C. Williams<br>Adam Massaro<br>Akerman LLP<br>1900 Sixteenth Street, Suite 950<br>Denver, Colorado 80202<br>303-640-2528<br>Joyce.c.williams@akerman.com<br>Adam.massaro@akerman.com |

77803523;1

*Attorneys for Defendant H.I.G. Capital*

## 2. STATEMENT OF JURISDICTION

Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and § 1367 as Plaintiffs bring claims under the Constitution and laws of the United States and related state-law claims. Jurisdiction supporting Plaintiffs' claim for attorney fees and costs is conferred by 42 U.S.C. § 1988 and Colo. Rev. Stat. § 13-21-131(3). Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). Plaintiffs contend that all the events alleged herein occurred within the State of Colorado. HIG has filed a motion to dismiss pursuant to F.R.C.P. 12(b)(2) because HIG is not (nor has it ever been) a resident of Colorado, and HIG is not otherwise subject to personal jurisdiction in Colorado.

## 3. STATEMENT OF CLAIMS AND DEFENSES

### a. Plaintiffs' statement:[1]

Dezaree Archuleta died by suicide at the El Paso County Criminal Justice Center ("CJC") after her cries for help were repeatedly ignored by Wellpath,[2] the El Paso County CJC's medical and mental health services provider, and its officials. Wellpath officials were deliberately indifferent to Ms. Archuleta's obvious, serious

---

[1] The facts section of Plaintiff's Complaint and Jury Demand [ECF #1] is hereby incorporated as if set forth fully herein.

[2] The references to Wellpath, its predecessor companies, and its officials, equally apply to H.I.G. Capital, LLC ("HIG") as it operates Wellpath (and operated its predecessor companies) as an alter ego subsidiary. *See Estate of Miller v. Cty. of Sutter*, No. 2:20-cv-00577-KJM-DMC, 2020 U.S. Dist. LEXIS 204517 (E.D. Cal. Oct. 30, 2020).

77803523;1

mental health needs, and unjustifiably failed to prevent her from killing herself. Wellpath and its officials were aware of, but callously ignored the almost constant pleas for help from Ms. Archuleta and signals that she was at significant and immediate risk of suicide. Over the twenty-three days of her incarceration before her death, Ms. Archuleta's medical file included an astounding sixteen separate incidents of Ms. Archuleta expressing her suicidality and multiple other risk factors that would have made it obvious to any mental health provider or lay person that she had a serious and substantial risk of suicide. She also reported having auditory and visual hallucinations. Defendants were, or should have been, aware that Ms. Archuleta experienced nearly every single risk factor on the Columbia-Suicide Severity Scale (C-SSRS).

Even though Ms. Archuleta was crying out for help, Defendant Edward Keaveny, a Wellpath official, repeatedly removed Ms. Archuleta from suicide watch, allowing Ms. Archuleta to engage in repeated and horrific acts of self-harm throughout her incarceration. Less than a week before her death, after being removed from suicide watch by Defendant Keaveny, Ms. Archuleta was found naked in her cell engaging in extreme self-harm, including using a screw to create massive gouges in her thighs. When Defendant Keaveny was called by El Paso County deputies to speak with Ms. Archuleta after the first of these incidents, Ms. Archuleta specifically requested to be seen by a psychiatrist so that she could receive the medication that she had previously been prescribed and successfully taken. In response, Defendant Keaveny told Ms. Archuleta that the psychiatrist

was impossible to reach on the phone, so it was not an option for Ms. Archuleta to receive her psychotropic medications while in the CJC. Instead of providing Ms. Archuleta the help she so desperately needed and repeatedly requested, Defendant Keaveny callously handed her a few pamphlets and told her to use her coping skills. He did not place her back on to suicide watch in order to keep her safe. Mere hours after Defendant Keaveny ignored her cries for help, Ms. Archuleta engaged in another act of serious self-harm by punching herself in the face until she bled.

Days after these two serious instances of self-harm, and despite Ms. Archuleta's direct statements that she was experiencing constant suicidal ideation and suffering visual and auditory hallucinations, Defendants Keaveny and another Wellpath official, Defendant Michelle Wesolowski, inexplicably again removed Ms. Archuleta from suicide watch. The day after being removed from suicide watch, Ms. Archuleta predictably committed suicide. Ms. Archuleta died just an hour after her last reported statements to Defendant Keaveny that she was experiencing constant suicidal ideation and was suffering visual and auditory hallucinations. Despite this, Defendant Keaveny made the conscious choice to not move Ms. Archuleta onto suicide watch.

Ms. Archuleta died by hanging herself in her cell from a metal grate that a high-level official at Wellpath, Defendant Christine Mohr, knew was a major suicide risk, but never addressed. Had Wellpath officials showed even the slightest concern for human life, Ms. Archuleta would still be alive today.

The investigation into Ms. Archuleta's death revealed the egregiousness of

77803523;1

the actions of Wellpath and its officials. Multiple El Paso County deputies stated during that investigation that it was obvious to everyone, from staff to other inmates, that Ms. Archuleta was suicidal. It was so clear to them that Ms. Archuleta should have remained on suicide watch that they openly questioned the decision-making of Wellpath officials and made sure to document the obviously callous decision-making by Defendant Keaveny in official reports.

Wellpath officials, including Wesolowski and Keaveny, affirmed that every action taken with respect to Ms. Archuleta was in compliance with Wellpath's policy, custom, and practice. Defendants Wellpath and Mohr failed to adequately train Wellpath's officials. Defendant Wellpath and Defendant Mohr failed to adequately train and supervise their mental health staff in such a way that it amounted to deliberate indifference to the serious mental health needs of inmates presenting with suicidal ideation, including Ms. Archuleta.

Wellpath's customs and practices were deliberately indifferent to inmate's mental health needs and caused the violation of Ms. Archuleta's constitutional rights and her death. Wellpath deliberately severely understaffed the CJC causing the violation of Ms. Archuleta's constitutional rights. During the time of and leading up to Ms. Archuleta's death, it was well known by Defendant Wellpath and Defendant Mohr that there were serious staffing issues that caused a pattern and practice of deliberately indifferent mental health care in the CJC, which included: not having inmates evaluated by higher level mental health care providers, even when necessary to prevent serious injury or death; failing to prescribe, or continue

77803523;1

providing, critical psychotropic medications; removing inmates from suicide watch due to staffing shortages; and removing inmates from suicide watch to reduce financial costs.

H.I.G. Capital owns and controls Wellpath, Correct Care Solutions, Correctional Healthcare Companies, and California Forensic Medical Group. H.I.G. Capital acts through its employees, agents, directors, officers and is responsible for the acts of its employees, agents, directors, and officers performed within the scope of such agency. Defendants Wellpath, Wesolowski, Keaveny, and Mohr were acting on behalf of H.I.G. Capital (and Wellpath) and were and are agents of H.I.G. Capital, and therefore H.I.G. Capital (in addition to Wellpath) is responsible for their conduct as described in this complaint.

Wellpath has a longstanding history of providing deliberately indifferent care. Wellpath has been found liable for providing customary deliberately indifferent mental health care by multiple governmental entities, experts, and former employees. A cascade of lawsuits demonstrates that Wellpath has been customarily deliberately indifferent mental health care to inmates like Ms. Archuleta.

As a result of Defendants' conduct, Plaintiffs bring the following legal claims:

1. Deliberately Indifferent Medical and Mental Health Care and Treatment in violation of the Fourteenth Amendment (pursuant to 42 U.S.C. § 1983) against all Defendants;

2. Negligence and Negligent Supervision and Training Causing Wrongful Death against all Defendants.

77803523;1

**b.     Wellpath Defendants[3]:** As detailed in Wellpath Defendants' Motion to Dismiss, Plaintiffs' state law claims should be dismissed because they failed to file a certificate of review.  Plaintiffs' negligent training and supervision claim against Wellpath and 14th Amendment deliberate indifference to serious mental health needs claim against Defendant Mohr should also be dismissed for failure to state a claim.  (Dkt. 22.)  Wellpath Defendants assert that the care they provided was reasonable, appropriate, and exceeded all applicable standards of care and that nothing about Decedent's appearance, condition, records, or reports required that they take any additional action or indicated that she would commit suicide.  Indeed, Decedent received ample mental health treatment, to include placement on suicide watch and transition when clinically indicated and was evaluated by mental health staff nearly every day of her detention.  Wellpath Defendants further deny they failed to train or supervise any of their employees and assert that their training, to include policies or practices regarding training, exceeded the standard of care and did not violate Decedent's constitutional rights.

Wellpath Defendants further deny that their actions or inactions caused or contributed to Plaintiffs' alleged injuries and assert Plaintiffs will be unable to establish causation.  Plaintiffs will also be unable to prove their supervisory liability claim as Defendant Mohr did not have particularized knowledge of Decedent's mental health condition.  Wellpath Defendants further deny that they have the

---

[3] Wellpath Defendants provide a "concise statement" of their defenses and do not "summarize the pleadings" in accordance with the Court's instructions for this section. (Dkt. 13-2 at 2.)

77803523;1

policies, practices, and customs outlined in Plaintiffs' Complaint and assert that, because Plaintiffs cannot establish an underlying constitutional violation, these claims fail. Further, Plaintiffs' claims fail as the alleged policies, practices, and customs were not the moving force behind the alleged violation and because Plaintiffs' claims are based upon a single incident, which is insufficient for *Monell* liability.

      **c.**    **H.I.G. Capital, LLC**: HIG is a Delaware limited liability company with a principal place of business located in Miami, Florida. HIG is private equity sponsor and investment firm that provides investment management, advisory, and related services to investment funds that invest in various businesses known as portfolio companies. Defendant Wellpath is one such portfolio company, but HIG does not hold any ownership interest in the portfolio companies, nor is it involved in the portfolio companies' day-to-day operations. HIG has moved to dismiss Plaintiffs' claims against HIG because: (a) this Court lacks both general and specific personal jurisdiction over HIG, and the Court cannot impute the forum contacts of Wellpath to HIG to exert personal jurisdiction over HIG; (b) even if this Court could exercise personal jurisdiction over HIG, Plaintiffs have not plausibly alleged an alter ego or agency relationship between HIG and Wellpath; and (c) to the extent Plaintiff attempts to hold HIG directly liable, Plaintiffs fail to plausibly allege any claims against HIG. Consequently, Plaintiffs' claims against HIG should be dismissed pursuant to Rules 12(b)(2) and/or 12(b)(6).

77803523;1

### 4.  UNDISPUTED FACTS

The following facts are undisputed:

1. Decedent was incarcerated at the El Paso County Jail from May 18 through June 9, 2022.

2. During Decedent's incarceration, Wellpath contracted with El Paso County to provide medical and mental health care at the El Paso County Jail.

3. Defendant H.I.G. Capital, LLC is a private equity sponsor and investment firm.

### 5.  COMPUTATION OF DAMAGES

Plaintiffs claim the following: (1) Declaratory relief and injunctive relief, as appropriate; (2) Actual economic damages as established at trial; (3) Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, discomfort, fear, anxiety, loss of enjoyment of life, loss of relationships, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses; (4) Punitive damages for all claims as allowed by law in an amount to be determined at trial; (5) Issuance of an Order mandating appropriate equitable relief, including but not limited to, issuance of a formal written apology from each Defendant to Plaintiffs, the imposition of policy changes designed to avoid future similar misconduct by Defendants, and mandatory training designed to avoid future similar misconduct by Defendants; pre-judgment and post-judgment interest at the highest lawful rate; and attorney's fees and costs. A more precise computation of Plaintiff's damages, to the extent Plaintiff's damages are subject to such computation, will be provided

77803523;1

during the normal course of discovery, and will be determined by a jury in its sound discretion following a presentation of the evidence at trial in this matter. Damages for emotional distress, in particular, are not susceptible to the type of calculation contemplated by Rule 26(a)(1). "[C]ompensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 487 n.3 (5th Cir. 2000). Punitive/Exemplary damages are sought based upon the egregious nature of the conduct of the defendants as set forth in the Complaint. Calculation of these damages and entitlements is premature and not susceptible to the type of calculation contemplated by Rule 26(a)(1).

**Wellpath Defendants:** Wellpath Defendants deny Plaintiffs are entitled to any damages, including punitive and attorneys' fees and costs. Further, Plaintiffs are not eligible to recover the injunctive, and much of the equitable, relief they seek.

**Defendant H.I.G. Capital, LLC:** HIG is not seeking damages from Plaintiffs at this time but reserves the right to seek fees and costs as appropriate under the Rules and applicable law. HIG denies that it damaged Plaintiffs or the decedent in any respect. HIG further disputes the bases for any punitive or exemplary damages or penalties.

### 6. REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER FED. R. CIV. P. 26(F)

a. Date of Rule 26(f) meeting: **August 7, 2024.**

b. Names of each participant and each party represented:

- Andy McNulty for Plaintiffs;

- Ashlee Hesman and Kristina Rood for Wellpath Defendants;

- Joyce Williams for Defendant H.I.G. Capital LLC.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made: Other than HIG, all parties have agreed to provide their Rule 26(a)(1) initial disclosures on September 10, 2024. HIG has filed a motion to stay initial disclosures and discovery as to HIG pending adjudication of HIG's motion to dismiss. Accordingly, whether HIG is required to provide Rule 26(a)(1) initial disclosures and, if so, the timing of such initial disclosures, is subject to the Court's rule on HGI's motion to stay discovery and/or the Court's rule on HIG's motion to dismiss.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):  See (c), above.  **HIG's Initial Disclosures (re jurisdictional issues) = due 9/24/2024.**

e. The parties have not agreed to conduct informal discovery..

f. The parties agree to take all reasonable steps to reduce discovery and other litigation costs, to include use of a unified exhibit numbering system, cumulative disclosure statements where new information is bolded and italicized, discovery responses where responsive documents are referenced by bates number, and remote depositions via video conference where practical.

g. The parties anticipate that their claims or defenses will involve limited discovery of some electronically stored information, however, they expect that most records will be maintained in electronic form.  The parties agree that, to the extent feasible (with the exception of video/audio evidence), the parties will exchange information (whether in paper or electronic form) in PDF format, but that native

format will be produced upon request, where possible.  The parties agree to work cooperatively to avoid discovery disputes related to electronically stored information.  .

    h.    Pursuant to Fed. R. Civ. P. 26(f), the parties have discussed the possibility for a prompt settlement of the case. The parties will report the result of any future settlement discussions to the Court as they deem necessary or useful.

### 7.   CONSENT

All parties **have not** consented to the exercise of jurisdiction of a magistrate judge.  [General discovery on HIG is stayed pending MTD.]

### 8.   DISCOVERY LIMITATIONS

[Limitations do not include limits on permitted jurisdictional discovery on HIG]

    a.    **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules**.

        i.  Plaintiff: Plaintiff proposes 15 depositions per side, exclusive of parties and experts; Plaintiffs shall be limited to 35 interrogatories to Defendants, collectively. Defendants, collectively, may serve a total of 25 interrogatories to Plaintiffs.

[**8 depos per side plus parties plus experts.**]

        ii.  Wellpath and HIG Defendants:  Wellpath and HIG Defendants request that the Court adopt the presumptive 10-deposition limit.  15 depositions plus depositions of parties and experts is excessive, unnecessary, and not proportional to the case.  They propose that each side be limited to 25 interrogatories.

[**25 Rogs per side.**]

  b. **Limitations which any party proposes on the length of depositions**:  All depositions, except for parties and experts, shall be limited to four hours.

  c. **Limitations which any party proposes on the number of requests for production and/or requests for admission**:

> i. Plaintiffs:  Plaintiffs shall be limited to 35 requests for production to Defendants, collectively. Defendants, collectively, may serve a total of 25 requests for production to Plaintiffs. Plaintiffs shall be limited to 35 requests for admission to Defendants, collectively. Defendants, collectively, may serve a total of 25 requests for admission to Plaintiffs.
>
> ii. Wellpath and HIG Defendants:  Wellpath and HIG Defendants propose that each side be limited to 25 requests for production and 25 requests for admission.

[Margin annotation: **25 RFPs and 25 RFAs per side.**]

  d. **Deadline for service of interrogatories, Requests for Production of Documents and/or Admissions**: 30 days prior to discovery cut off.

  e. **Other planning or Discovery Orders**: The parties intend to timely file a protective order facilitating the exchange of sensitive and confidential information for entry by the Court.  No opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR. 7.1(a). If the parties are unable to reach agreement on a discovery issue after conferring, they shall comply with Magistrate Judge Starnella's Discovery Dispute Procedures as outlined

in the Uniform Civil Practice Standards of the United States Magistrate Judges regarding the issue. Both of these steps must be completed before any contested discovery motions will be adjudicated by the Court. **Joint Motion for Protective Order = due 9/24/2024.**

9. **CASE PLAN AND SCHEDULE**

The plan and schedule must include the following items:

a. Deadline for Joinder of Parties and Amendment of Pleadings**:**
   (1) **Plaintiff: The filing of amended and supplemental pleadings will be made pursuant to Fed. R. Civ. P. 15.**
   (2) **Wellpath and HIG Defendants**: ~~September 13, 2024~~ **October 25, 2024**

b. Discovery Cut-off: **November 2, 2025.**

c. Dispositive Motion Deadline: **December 2, 2025.**

d. Expert Witness Disclosure

   (1) Statement regarding anticipated fields of expert testimony, if any:

   a) <u>Plaintiff</u>: Plaintiff anticipates calling retained experts in the following possible fields: economic damages, value of life, psychological damages.

   b) <u>Wellpath Defendants</u>: Defendants anticipate calling retained experts in the following possible fields: All fields identified by Plaintiffs, correctional medicine, nursing, treating providers, psychiatry, mental health providers.

   c) <u>Defendant H.I.G. Capital, LLC</u>: HIG anticipates calling a retained expert in the field of private equity and the role equity sponsors and investment managers play in managing investments on behalf of private equity funds.

77803523;1

(2) The parties shall be limited to a total of five **affirmative** retained expert witnesses per side.

(3) Designation of experts:

  a) Plaintiffs' proposal: The parties shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or before April 2, 2025. The parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or before June 2, 2025.

  b) Wellpath and HIG's proposal: Plaintiffs shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or before August 2, 2025. Defendants shall designate all affirmative **& rebuttal** experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or before September 2, 2025. **Plaintiffs'** Rebuttal experts shall be designated on or before October 2, 2025.

e. Deposition Schedule:

| Name of Deponent* | Date of Deposition | Time of Deposition | Expected Length of |
|---|---|---|---|
| Shelly Romero | TBD | TBD | 7 hours |
| Ed Keaveny | TBD | TBD | 7 hours |
| Michelle Wesolowski | TBD | TBD | 7 hours |
| Christine Mohr | TBD | TBD | 7 hours |

77803523;1

| | | | |
|---|---|---|---|
| Laura Stengle | TBD | TBD | 4 hours |
| Raymond Carrington | TBD | TBD | 4 hours |
| Blake Imgrund | TBD | TBD | 4 hours |
| Trisha Mathill | TBD | TBD | 4 hours |
| Andrew Fodera | TBD | TBD | 4 hours |
| Lori Seitz | TBD | TBD | 4 hours |
| Robert King | TBD | TBD | 4 hours |
| Anthony Lupo | TBD | TBD | 2 hours |
| Robert King | TBD | TBD | 2 hours |
| Marcia Garcia | TBD | TBD | 2 hours |
| Andrew Lucas | TBD | TBD | 2 hours |
| Stephanie Mulholand | TBD | TBD | 2 hours |
| Alicia Reavis | TBD | TBD | 2 hours |
| Heaven Taylor | TBD | TBD | 2 hours |
| Jay Archuleta | TBD | TBD | 4 hours |
| Aaliyah Archuleta | TBD | TBD | 4 hours |
| Shireese Archuleta | TBD | TBD | 4 hours |
| Shaienrae Archuleta | TBD | TBD | 4 hours |
| Ciarra Romero | TBD | TBD | 4 hours |
| Rule 30(b)(6), F.R.C.P. deposition(s) of Wellpath | TBD | TBD | 7 hours |
| Rule 30(b)(6), F.R.C.P. deposition(s) of H.I.G. Capital | TBD | TBD | 7 hours |
| Other individuals disclosed by the parties in their disclosures and discovery responses | TBD | TBD | __ hours |

\* The Parties reserve the right to take additional depositions of persons identified in the Parties' disclosures and through the course of discovery.

77803523;1

## 10. DATES FOR FURTHER CONFERENCES

a. Status conferences will be held in this case at the following dates and times: _____

**TBD** — Jurisdictional. If HIG's Motion to Dismiss is denied, the parties shall file a motion for a status conference to discuss status of discovery and what, if any, additional discovery is needed re: HIG.

b. A final pretrial conference will be held in this case on _____ at o'clock ____. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference. **\*\*See SKC practice standards\*\***

## 11. OTHER SCHEDULING ISSUES

a. Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement: HIG has filed a motion to stay initial disclosures and discovery as to HIG pending adjudication of HIG's motion to dismiss. Plaintiffs oppose this motion. Plaintiffs have filed a motion to conduct jurisdictional discovery. HIG opposes this motion.

b. Statement of anticipated length of trial to the jury:

- Plaintiff's proposal: Fifteen (15) days.

- Wellpath Defendants' proposal: 10 days. Counsel for the County Defendants, Ashlee Hesman, has been ordered by the Court in *Rodrigues v. Wellpath LLC et al*, Maricopa County Superior Court, CV 2020-006273 to advise the Court in every proposed scheduling order that trial in the *Rodrigues* case is set for April 15-17, 21-24, 28-30; and May

77803523;1

1, 5, 2025. Because the *Rodrigues* case has previously been reset several times due to trial conflicts in other federal cases, the *Rodrigues* Court requests that this Court not set trial in this matter during the *Rodrigues* trial.

c. The Parties do not anticipate conducting any pretrial proceedings at the District Court's facilities in Colorado Springs or Durango, unless set by this Court.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.Colo.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.Colo.LCivR 7.1(a). **& Magistrate Judge's discovery dispute procedures.**

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this __10th__ day of __September__ 2024.

BY THE COURT:

_____
Kathryn A. Starnella
United States Magistrate Judge

APPROVED:

*s/ Andy McNulty*
_____
Mari Newman
Andy McNulty
NEWMAN | MCNULTY LLC
1490 N. Lafayette Street, Suite 304
Denver, CO 80218
Telephone: 720-850-5770
Mari@Newman-McNulty.com
Andy@Newman-McNulty.com

*Attorneys for Plaintiff*

*s/*
_____
Ashlee Hesman
Kristina Rood
Struck Love Bojanowski & Acedo, PLC
3100 W. Ray Road, Suite 300
Chandler, Arizona 85226
480-420-1608
krood@strucklove.com

*Attorney for Defendants Wellpath, Mohr, Keaveny, and Wesolowski*

*s/*
_____
Joyce C. Williams
Adam Massaro
Akerman LLP
1900 Sixteenth Street, Suite 950
Denver, Colorado 80202
303-640-2528
Joyce.c.williams@akerman.com
Adam.massaro@akerman.com

*Attorneys for Defendant H.I.G. Capital*

77803523;1