IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00997-SKC-KAS

ESTATE OF DEZAREE NICOLE ARCHULETA, et al.,

        Plaintiffs,

v.

WELLPATH, LLC, et al.

        Defendants.

## WELLPATH'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

COMES NOW, Defendant Wellpath, LLC, by and through its undersigned counsel, Gordon Rees Scully Mansukhani, LLP, and hereby responds to Plaintiff's Motion to Compel, Doc. 129, as follows.

### I.    Introduction

The Court should deny Plaintiff's motion to compel. Wellpath, who should not even be named a nominal defendant in this case, appropriately objected to Plaintiff's subpoena for production. Plaintiff's subpoena requests are impermissible under the more limited discovery permitted of a non-party under Fed. R. Civ. P. 45. Further, Plaintiff's subpoena requests are not relevant and/or proportional to Plaintiff's needs in litigating his remaining claims. Certain of Plaintiff's requests are inappropriate under the PSQIA. Finally, sanctions are not appropriate given this case's unique procedural history and related extra-jurisdictional litigation, which is only now shedding light on Wellpath's correct role in cases arising from alleged pre-petition activity.

1

## II.   Procedural History

Plaintiff served a subpoena upon Wellpath, LLC on October 21, 2025 following Wellpath's agreement to waive service of the same. As acknowledged in Plaintiff's Motion, Wellpath responded to Plaintiff's subpoena on November 12, 2025 – 22 days after accepting service of the subpoena. In response to the subpoena, Wellpath set forth specific objections to the information sought by Plaintiff in the subpoena. **Exhibit A**. Further, Wellpath referenced responsive documents, either produced contemporaneously with its subpoena response or produced previously in this litigation, which it believed were responsive to Plaintiff's subpoena requests. Id. Wellpath also indicated its willingness to supplement certain responses if responsive documents were found and/or Plaintiff willingly narrowed certain overbroad topics in the subpoena. Upon information and belief, during subsequent communications between prior counsel for Wellpath and Plaintiff's counsel, the parties were able to agree upon certain modifications to objectionable portions of the subpoena. Most recently, prior counsel for Wellpath spoke with Plaintiff's counsel on January 12, 2026, during which time she confirmed her office would be withdrawing from its representation of Wellpath and providing an updated status as to supplemental productions by Wellpath. Undersigned counsel subsequently entered his appearance on behalf of Wellpath on January 30, 2026.

## III.   Legal Standards

Wellpath agrees that the present dispute is governed by Fed. R. Civ. P. 45 as it pertains to non-party discovery. Notably, in comparison to party discovery under the Rules, non-parties receive significantly stronger protection from overreaching discovery than their counterparts. Party discovery under Rules 26-37 allows broad access to information through multiple methods,

2

including interrogatories, requests for production of documents, and requests for admissions. Non-party discovery under Rule 45 is strictly limited to subpoenas, provides stronger procedural safeguards, including, but not limited to cost shifting for significant expenses, and requires courts to enforce duties to avoid imposing undue burden or expense on non-parties. *See* Fed. R. Civ. P. 45. While "[a] subpoena to a party under [Federal Rule of Civil Procedure 45] is subject to the same discovery limitations as those set out in Rule 26 . . . the status of a person as a non-party is a factor that weighs against disclosure." *Fusion Elite All Stars v. Varsity Brands,* LLC, 340 F.R.D. 225 (2002). Despite Plaintiff's attempts to conflate the standards for party and non-party discovery, in considering Plaintiff's motion to Compel, the Court must adhere to the profoundly different approaches relevant to each scenario.

IV. **Argument and Authority**

A. **To the extent Plaintiff's argument relies upon Wellpath's continued involvement as a Nominal Defendant to this action, the Bankruptcy Court for the Southern District of Texas has recently clarified that such continued participation is improper.**

The Bankruptcy Court for the Southern District of Texas recently ruled, unambiguously, that Wellpath is not an appropriate Nominal Defendant in this action. As has been the case since lifting of the bankruptcy stay, Wellpath's role in litigation arising from pre-petition events has continued to evolve. However, with its recent Order, the Bankruptcy Court appears to have final put any remaining questions to rest.

On January 26, 2026, the Bankruptcy Court entered its Revised and Amended Clarifying Order Enforcing (A) The First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates, and (B) The Trust Distribution Procedures. **Exhibit B**.

3

In its Order, the Bankruptcy Court ruled that, "[h]olders of General Unsecured Claim arising from alleged pre-petition personal injury tort or wrongful death may 'proceed in the appropriate civil court and litigate such claim with the [Trust] included as a *nominal defendant*." Id. at p. 2, ¶ 1 (emphasis in original). The Plain *does not* permit any party to proceed against the Post-Restructuring Debtors or any Debtor, "including but not limited to Wellpath, LLC, in any capacity, *including as a nominal defendant*." Id. at p. 2, ¶ 2 (emphasis added). Further, pursuant to the Bankruptcy Plan, the Bankruptcy Court will permit parties to proceed with pre-petition claims against a Debtor "only where such inclusion is necessary for the party to seek or maintain insurance coverage for their claim." Id. The Bankruptcy Court's Order places the burden on the Holder of an Unsecured Claim to prove that maintaining the claim against Wellpath is appropriate in light of potential insurance coverage. Id.

To the extent Plaintiff argues Wellpath is subject to discovery obligations in excess to any other stranger to this litigation, Plaintiff's position runs contrary to the Bankruptcy Court's recent Order. Instead, Wellpath is subject to non-party discovery to the extent that any such third-party would be subject to the same. Id. at p. 4, ¶ 9.

### B. Wellpath appropriately objected to Plaintiff's subpoena.

Plaintiff's argument that Wellpath failed to object to Plaintiff's subpoena and, accordingly, should be compelled to respond to Plaintiff's subpoena in its entirety is contradicted by her own recount of the history underlying this motion.

As discussed in Plaintiff's motion and pursuant to Fed. R. Civ. P. 45, a person subject to a subpoena may file a written objection and seek to have the subpoena modified or quashed. Fed. R. Civ. P. 45(d)(3)(A)(i) – (iv). *Alternatively*, the recipient of the subpoena may object to the

4

commanded production by "serv[ing] on the party or attorney designated in the subpoena a written objection to inspecting [or] copying . . . any or all of the materials." Fed. R. Civ. P. 45(d)(2)(B)(i). Following such an objection, "[a]t any time, on notice to the commanded person, *the serving party may move* the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

While Plaintiff may disagree with the objections stated by Wellpath in response to her subpoena, the Parties are proceeding exactly as contemplated by the Rule. As recounted by Plaintiff, upon service of the subpoena and acceptance of the same by prior counsel for Wellpath on October 21, 2025, counsel engaged in multiple discussions regarding the timing of Wellpath's response. Doc. 129, p. 2. On November 12, 2025, Wellpath responded to Plaintiff's subpoena, including its objections to Plaintiff's individual subpoena requests. Id.; **Ex. A.** The Parties then discussed their respective positions related to the subpoena over the following two months, at which time Plaintiff chose to move the Court for an order compelling production, as permitted b Fed. R. Civ. P. 45.

Plaintiff's assertion that Wellpath "having filed no objection . . . is legally required to fully respond to Plaintiff's subpoena" is both factually and procedurally incorrect. Wellpath objected to Plaintiff's subpoena within the time frame agreed to by the Parties. Following subsequent discussions, which did not remedy Plaintiff's disagreements with Wellpath's position, Plaintiff chose to move the Court to compel Wellpath's further response. This is precisely the way the Rule is designed and Wellpath's adherence to the same has not waived its appropriate objections to Plaintiff's overreaching subpoena.

### C. Plaintiff's attempts to gather evidence supportive of his *Monnell* claims are baseless following Wellpath's bankruptcy discharge. Nor are such requests appropriately tailored to remaining supervisory claims against Dr. Mohr.

In part, Plaintiff acknowledges that the discovery sought is substantially identical to that which would be sought to support a *Monnell* claim. See Doc. 129, p. 11 (referencing Requests No. 9, 11, 13, 15, 17, and 19). First, claims against Wellpath based on pre-petition actions, including those potentially giving rise to *Monell* liability, were discharged in bankruptcy. Pursuant to the bankruptcy injunction, Plaintiff is not permitted to conduct discovery into its discharged § 1983 claim is improper. Any *Monell* liability that could have been imposed upon Wellpath was discharged in the bankruptcy.

Further, documents necessary to prove liability under *Monell* are irrelevant to the ongoing claims against the Individual Defendants. Federal courts across all circuits uniformly hold that *Monell* liability cannot be imposed on individual defendants. For example, The Eastern District of Pennsylvania explained that Monell liability applies only to municipalities, not individuals and dismissed individual defendants with prejudice because amendment would be futile. *Gass v. Matthews,* Not Reported in Fed. Supp., 2018 WL 6249710 (E.D. Penn. 2018).

Similarly, other federal courts have reached identical conclusions. For example, the Eastern District of Pennsylvania reiterated this principle in *Moore v. Solanco School District*, stating that Monell liability applies only to municipalities, not individuals. *Moore v. Solanco School District,* 471 F.Supp.3d 640 (E.D. Penn. 2020). When plaintiffs mistakenly assert Monell claims against individual defendants, courts consistently dismiss these claims.

Plaintiff hedges his bets by arguing that the requested information is relevant to his supervisory claim against Dr. Mohr, which happens to nearly identically resemble the information that would be requested to support a *Monnell* claim. However, Plaintiff's subpoena requests are not appropriately limited if they are, in fact, intended to support such a claim. For instance, Request

6

No. 9 is not limited to supervisory actions alleged taken by Dr. Mohr. **Exhibit C**, Request No. 9, p. 11-12. Rather, Request No. 9 requests "all documents" related to "any claims or complaints (whether formal or informal)" made against "Wellpath" for "mistreatment and/or failure to provide medical and/or mental health care)" at the El Paso County Criminal Justice Center. The Request is not limited by subject matter, temporal scope, or even the periods of Dr. Mohr's supervisory role at the Center.

The remaining Requests allegedly related to Dr. Mohr's supervisory role are similarly lacking limitations regarding the remaining claim against Dr. Mohr. **Ex. C**, Request No. 11, 13, 15, 17, 19, p. 12-15. As with Request No. 9, the additional requests seek information related to "all documents of any internal or external review," "every detainee/inmate death" for the *last decade*, "all records related to mortality reviews" for "*any* facility at which Wellpath provides medical services" over a five year period, informal and formal disciplinary actions "taken against *any* Wellpath employee or contractor" for a *seven year period*, and NCCHC accreditation documents for the entirety of Wellpath's tenure at the Center. While Plaintiff argues these requests are relevant to Plaintiff's individual claims against Dr. Mohr, the plain language and resultant scope of these requests make it clear that these Requests are not reasonably tailored in scope to any such claims.

> **D. It would be error for the Court to compel production of PSQIA-protective information. Further, the Court cannot decide issues related to PSQIA privilege based on Plaintiff's Motion to Compel alone. The Order referenced by Plaintiff has been appealed to the Article III Judge in the subject case.**

Plaintiff requests that this Court rule upon Wellpath's assertion of PSQIA privilege pertaining to mortality reviews based upon the information presented in her motion to compel. The Order relied upon by Plaintiff is advancing this argument is not binding upon this Court and has been appealed to the Article III Judge before which that matter is pending. Further, ruling on

Wellpath's assertion of PSQIA privilege on Plaintiff's motion to compel, without further process, would be inappropriate.

Part III of the Mortality & Morbidity Reviews are protected under the Patient Safety and Quality Improvement Act of 2005 (PSQIA), and therefore, are protected from disclosure in a "federal, state, or local, civil, criminal, or administrative subpoena or order" as Patient Safety Work Product (PSWP). 42 U.S.C. Section 299b-22(a)(1). Further, the purported need for other mortality reviews to show a pattern and practice has been extinguished with discharge of Plaintiff's *Monell* claim.

There are two pathways for protection under the PSQIA: (1) documents "which are assembled or developed by a provider for reporting to a PSO and are reported to a PSO, which includes information that is documented within a patient safety evaluation system for reporting to a PSO, and such documentation includes the date the information was entered to the patient safety evaluation system;" and (2) documents "which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation." 42 U.S.C. Section 299b-21(7)(A). Both pathways carry equal protection from disclosure under the PSQIA.

Wellpath, as a health care provider, participates with a federally certified Patient Safety Organization ("PSO") as part of its patient safety activities, with the goal of improving patient outcomes by allowing healthcare providers to be candid without fear of retribution. Wellpath has maintained a relationship with the Center for Patient Safety since May 26, 2016. The Center for Patient Safety ("Center") was listed by the Agency for Healthcare Research and Quality (AHRQ) as a federally certified PSO on November 5, 2008. The Center has maintained its certification since 2008. Wellpath's PSO participation is governed by the PSQIA. In collaboration with the Center,

8

Wellpath conducts patient safety activities as part of its patient safety and quality improvement initiatives. Specifically, one of the main activities includes the collection, maintenance, and analysis of confidential and PSWP, which is documented in the Part III root cause analysis documents.

The PSWP at issue here, the Part IIIs, is identifiable, meaning it includes the identities of the providers, patients, or reporters involved. 42 U.S.C. § 299b-21(2). The limited exceptions to PSQIA privilege for identifiable patient safety work product set forth in 42 U.S.C. § 299b-22(c)(1)(A)-(C) do not apply to these circumstances. Nothing in the PSQIA or its implementing regulations permits a waiver of the privilege, even if an impermissible disclosure of PSWP occurs. 42 C.F.R. §§ 3.204(b)(1); 3.208. Courts tasked with determining whether PSQIA privilege extends over alleged patient safety work product ask two questions: (1) whether those materials were "created for the purpose of reporting to a patient safety organization: and (2) whether they were "so reported." *Nelms v. Wellpath, LLC*, 667 F.Supp.3d 560, 563 (E.D. Mich. 2023) (quoting *Penman v. Correct Care Sols., LLC*, No. 5:18-CV-00058-TBR-LLK, 2020 WL 4253214, at *3 (W.D. Ky. July 24, 2020), and citing *Tinal v. Norton Healthcare, Inc.*, No. 3:11-CV-596-S, 2014 WL 12581760, at *11 (W.D. Ky. July 15, 2014).

As the Nevada Supreme Court recently concluded, because the PSQIA does not contemplate waiver of the privilege over identifiable patient safety work product, the privilege cannot be waived. *Sunrise Hospital and Medical Center, LLC v. Eighth Judicial District in and for the County of Clark*, 544 P.3d 241, 247 (Nev. 2024). The Congressional goal of the PSQIA is to incentivize the health care industry "to identify and learn from errors." *Id*. (citing S. Rep. No. 108-196, at 4 (2003). "The PSQIA grants privileges to information produced in pursuit of that

9

goal, like patient safety work product." *Sunrise Hospital*, 544 P.3d at 247. The records here meet the requirements of 42 U.S.C. § 299b-21(7) and are afforded non-waivable PSQIA protection.

Based upon the foregoing, it would be reversible error to compel production of PSQIA-protected documents, especially without further process afforded to Wellpath to demonstrate the appropriate nature of its privilege assertion. Accordingly, to the extent the Court entertains Plaintiff's request for production of PSQIA-protected documents, Wellpath respectfully requests that the Court set this discrete issue for an evidentiary hearing, during which Wellpath may be afforded the opportunity to present evidence and testimony in support of its assertion of PSQIA privileges.

### E. Sanctions are inappropriate in this matter.

For several reasons, many of which are outside the control of the Parties to this lawsuit, this case has experienced a prolonged and winding history. Only recently have questions surrounding the very nature of Wellpath's role in continued litigation regarding pre-petition allegations been answered. As Wellpath has dutifully sought clarification of these issues central to its participation, such as the one presently before the Court, Wellpath is only now receiving clarity on those issues. Furthermore, Wellpath has recently engaged undersigned counsel to represent it in this suit. After familiarizing himself with the issues before the Court on Plaintiff's motion, Wellpath and counsel are already in the process of gathering and preparing for production records responsive to Plaintiff's subpoena. Given the unique procedural history of this case, as well as delays caused by factors outside of the Parties' control, Wellpath contends that an award of sanctions would not be appropriate in this matter.

## V.  Conclusion

WHEREFORE, having responded to Plaintiff's Motion to Compel, Wellpath respectfully requests that the Court deny the motion pursuant to Fed. R. Civ. P. 45, deny Plaintiff's request for sanctions, and enter such other and further orders as the Court deems appropriate. Further, to the extent the Court entertains compelling production of PSQIA-protected documents, Wellpath respectfully requests the Court hold an evidentiary hearing on the same to determine whether the PSQIA applies to such documents and forbids their production.

Dated: February 2, 2026

**GORDON REES SCULLY MANSUKHANI**

*/s/ Christopher R. Jones*
Christopher R. Jones
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel.: (303) 534-5160
Fax: (303) 534-5161
crjones@grsm.com
*Attorney for Defendant Wellpath LLC*

11

## CERTIFICATE OF SERVICE

I certify that on February 2, 2026, a copy of the foregoing was electronically filed with the Clerk of the United States District Court which will send notification of such to counsel of record.

*/s/ Christopher R. Jones*
For Gordon Rees Scully Mansukhani LLP
